UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

IN RE:                                                                    14-MC-0021, 14-MC-0028, 14-MC-0031

GLAY COLLIER, II                                                  JUDGE ROBERT G. JAMES


OPINION AND ORDER

      This Opinion addresses the conduct of respondent, Glay H. Collier, II ("Collier"). All the District Judges have reviewed the record and briefing by respondent and have determined that an appropriate disciplinary sanction should be imposed pursuant to Local Rule 83.2.10.

I.    FACTS AND PROCEDURAL HISTORY

      Collier is engaged in the practice of bankruptcy law in the Western District of Louisiana. Between 1992 and November 5, 2013, Collier was a member, along with Thomas C. McBride, in McBride & Collier, LLC. The firm had offices in Shreveport, Monroe, and Alexandria. Collier oversaw the Shreveport and Monroe offices, while McBride supervised the Alexandria branch. Since the LLC was dissolved, Collier has continued to practice bankruptcy law with offices in Shreveport and Monroe.

      Collier advertised and performed "No Money Down" bankruptcies where he would pay the court costs up front for both Chapter 7 and Chapter 13 bankruptcies.

      In 2010, Ms. Dorothy Wheeler ("Wheeler") hired Collier to handle her Chapter 7 Bankruptcy proceeding. She filed suit against McBride & Collier in 2011, alleging, *inter alia*, that Collier had failed to utilize the statutorily required employment contract and that he had unlawfully attempted to collect attorney's fees. *See Wheeler v. Collier*, 11-01670.

On July 14, 2014, following an evidentiary hearing in the case, Judge Maurice S. Hicks ordered the firm to pay Wheeler $41,300, an award that included disgorgement of fees, damages in equity, and punitive damages. On July 16, 2014, Chief Judge Dee D. Drell referred all matters pertaining to the possible disciplinary proceedings against Collier and McBride to Judge Robert G. James. *See In re Collier*, Misc. No. 14-0021. The underlying case before Judge Hicks remains open following remand from the United States Court of Appeals for the Fifth Circuit.

On August 27, 2014, Chapter 7 Trustee John Hodge ("Hodge") brought a complaint of attorney misconduct against Collier, which was also referred to Judge James. *See In re Collier*, 14-0028. Hodge complained that Collier, as a "mass filer of consumer bankruptcy petitions, perpetrated a fraud on the bankruptcy court and his own clients by seeking and collecting: (a) undisclosed compensation; (b) undisclosed costs; and (c) fees or expenses in excess of those permitted to be charged under the bankruptcy court's standing order governing 'no look' fees in chapter 13 cases."[1] *Id.* [Doc. No. 1].

On September 23, 2014, Melanie Shrell ("Shrell"), a former associate who worked in Collier's office from 2010-2013, also brought a complaint of attorney misconduct against him. *In Re: Glay H. Collier, II*, 14-MC-0031. Shrell alleged that Collier

> had policies in place whereby he: (1) collected attorney fees post-petition in Chapter 7 cases; (2) refused to do work and required his staff to refuse to do work on cases when clients did not make the post-petition payments; (3) refusal to perform said work resulted in clients being prejudiced whereby their discharges were cancelled; (4) collecting undisclosed compensation in Chapter 13 cases; (5) collecting fees in [C]hapter 13 cases in violation of the automatic stay; (6)

---

[1]In Chapter 13 cases, there is a standing order in the Bankruptcy Court for the Western District of Louisiana which sets the no look fees. Section (2)(B) of the Amended Standing Order provides that "[a]ny advances made by debtor's counsel for filing fees or expenses preconfirmation will be considered included in the no[]look fees set forth herein."

> collecting fees in [C]hapter 13 cases in violation of the "no look" fee order; and, (7) collecting fees in [C]hapter 13 cases in excess of the "no look" fee allowed by the bankruptcy court.

*Id.* [Doc. No. 1]. Shrell further averred that she filed a complaint of misconduct with the Louisiana Disciplinary Board based on these alleged actions and inactions. Shrell's Complaint was also referred to Judge James for disciplinary proceedings.

On April 17, 2015, Judge Jeffrey P. Norman, United States Bankruptcy Judge for the Western District of Louisiana, issued an Opinion in another case involving one of Collier's former clients, Angela Washington. *See* Bankruptcy Case No. 10-30666 and related Adversary Proceeding, Case No. AP-14-03017. Judge Norman referred a copy of his Opinion to Chief Judge Drell for initiation of disciplinary proceedings against Collier based on his conduct in the *Washington* case; these disciplinary proceedings were referred to Judge James. Judge Norman also set a show cause hearing for July 16, 2015, to consider whether Collier should be required to refund or disgorge fees to former clients.

In light of the evidentiary hearing already set in the *Washington* case, on April 27, 2015, I issued a minute entry referring the other disciplinary cases to Judge Norman to conduct a consolidated evidentiary hearing. Judge Norman was charged with issuing findings of fact to be considered by Judge James in making a disciplinary recommendation to the Judges of the Western District of Louisiana.

On July 10, 2015, Collier filed Motions for Consent Discipline in each of the pending disciplinary cases. Collier admitted the following:

3

2.

Respondent admits that from the years 2010 until mid 2014 that he collected fees from numerous clients in Chapter 7 cases and that this was his standard practice for all Chapter 7 cases he filed during those time periods, for purposes of the allegations made in proceedings 14-MC-0021 and 14-MC-0031.

3.

Respondent further admits that the collection of the said fees in Chapter 7 was systemic, in that in all or nearly all Chapter 7 cases Mr. Collier filed during the relevant time period involved the payment of post-petition fees by ACH debit, but perhaps by other means, in limited cases, as a means of receiving payment for fees, and that he did not receive fees generally pre-petition before the bankruptcy was filed, and that the agreements to pay the fees and to initiate the ACH debits were made pre-petition until the summer of 2014 when in four cases the ACH agreements were signed post-petition.

4.

Respondent further admits, in the context of Chapter 7 consumer bankruptcy cases where fees were being paid post-petition, it became his practice from mid 2012 until November 2013 to cease work for certain clients who were not paying his post-petition fees, and without filing appropriate motions to withdraw, in violation of his ethical duties to his clients; this practice ceased in December 2013.

5.

Specifically to case 14-MC-0031 and the Washington case before Judge Norman as to which Judge Norman has made a requested referral for discipline, with the said adversary proceeding bearing case number 14-AP-3017, United States Bankruptcy Court, Western District of Louisiana, Monroe Division, Mr. Collier admits to not completing work, and specifically failing to file debtor education certificates, for certain Chapter 7 clients who were not staying current on their post-petition fees, as alleged specifically in those complaints or the evidence produced in those proceedings.

6.

On July 17, 2014, Respondent reviewed his Chapter 7 bankruptcy cases from 2012 and 2013 and determined which cases had been dismissed or denied a

discharge because of the failure to take and/or file debtor education certificates and instructed his office to contact each client and have the client take the course at his cost and obtain their discharges; this was completed within a few days.

7.

As to case 14-MC-0028, Mr. Collier admits the factual allegations made therein.

8.

As to cases 14-MC-0028 and 14-MC-0031, as well as the Washington case, supra, Mr. Collier admits to collecting filing fees from Chapter 13 debtors post-petition in violation of the Court's standing orders regarding no-look fees in Chapter 13 bankruptcy cases, while requesting the no-look fee in all of his Chapter 13 cases.

9.

Including the cases noted in 14-MC-0028, 14-MC-0031, the Respondent admits to collecting $59,619.53 from debtors across approximately 479 or more distinct Chapter 13 bankruptcy cases, and possibly collected or attempted to collect fees in other cases, but for which he has been unable to discover due to poor record keeping. A list of the cases which Respondent knows he collected filing fees in Chapter 13 in violation of the Bankruptcy Court's no-look fees is attached hereto as Exhibit A.

10.

Respondent admits to making unprofessional remarks and otherwise treating his former associate, Melanie Shrell, unprofessionally, in case number 14-MC-0031, as alleged by the complainant.

Collier contended that his immediate disbarment or suspension would work a hardship on his clients. Accordingly, Collier stated that he would consent to discipline in the form of a two-year suspension, subject to a two-year probationary period during which time he would deposit $59,619.53 for refunds to debtors from whom he collected fees, would refund any other fees that a court subsequently finds he had collected, would implement a law practice management

software program, would attend a Louisiana Disciplinary Board and law practice management CLE (in addition to completion of the regular CLE hours), would submit a request for consent discipline under these same terms to the Louisiana Disciplinary Board and request a practice monitor, and would agree to imposition of the two-year suspension if he violated any of the aforementioned terms. He further agreed to a public reprimand and that the terms of his discipline be made public.[2] Finally, he agreed that, if he engaged in any further prohibited collection of fees, his conduct would result in immediate disbarment without benefit of the usual disciplinary proceedings.

Judge Norman held evidentiary hearings on July 16, 17, and 20, 2015. Additionally, on July 27, 2015, Judge Norman held another hearing in the bankruptcy case of Cecilia Shanta Milton, Bankruptcy Case No. 12-13457 and related Adversary Proceeding of *Hodge v. Collier*, 14-01009.

On August 4, 2015, Collier filed Motions to Enforce Seal and for Mistrial in the disciplinary cases. Collier protested Judge Norman's use of information from the sealed disciplinary cases in other cases and moved to enforce the seal or for a mistrial. Judge James set a briefing schedule on the pending motions.[3] Hodge filed an opposition memorandum to the motion in Case No. 14-MC-0028. No responses were filed in the other pending disciplinary matters.

On August 7, 2015, Judge Norman issued a Report to the United States District Court

---

[2]Collier made certain other admissions and agreed to other remedies as discipline which are not included in this Opinion because they contain confidential information.

[3]In light of the Court's Opinion and Order, Collier's Motions to Enforce Seal and for Mistrial are moot and will be denied as such.

with findings of fact as to each referred matter.  Among his other determinations, Judge Norman concluded that Collier's conduct violated the Louisiana Rules of Professional Conduct 1.1, 1.3, 1.4, and 1.5.  Judge Norman stressed the "extremely large scope of the violations" and that "the Court may never know the exact number of cases in which violations occurred" because of Collier's "horrendous" record keeping.

On August 27, 2015, Collier filed Amended (or Second) Motions for Consent Discipline in each of the cases.  Collier admitted the allegations in Case No. 14-MC-0028.  He further admitted to collecting fees in Chapter 13 cases post-petition in Case Nos. 14-MC–0028, 14-MC-0031 and the *Washington* case.  He again admitted to collecting $59,619.53 from debtors in 479 or more Chapter 13 bankruptcy cases.  He again admitted making unprofessional remarks to Shrell and treating her unprofessionally.  He then consented to disbarment, rather than his earlier offer to a suspended two-year term of probation.

By minute entry dated September 3, 2015, Judge James set a response date to Collier's Amended Motion for Consent Discipline, but no response or opposition memoranda were filed.

On September 8, 2015, Collier filed a Supplement to his Amended Motions for Consent Discipline.  He stated that he had discussed his obligations under the Louisiana Rules of Professional Conduct with the United States Trustee.  In addition to consenting to disbarment, Collier agreed to (1) thoroughly review his records and return any advance payment of fees or expenses that has not been earned or incurred and to respond promptly to any fee inquiry by former clients; (2) send a letter within thirty days of disbarment notifying any current or former clients; (3) properly dispose of any appropriate documents without disclosing or making available a client's or former client's personally identifiable information or other confidential

information.

II.   **LAW AND ANALYSIS**

Rules 1.1, 1.3, 1.4, and 1.5 of the Louisiana Rules of Professional Conduct govern the issue. Those rules state in pertinent part:

Rule 1.1. Competence

(a)   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

(b)   A lawyer is required to comply with the minimum requirements of continuing legal education as prescribed by Louisiana Supreme Court rule.

(c)   A lawyer is required to comply with all of the requirements of the Supreme Court's rules regarding annual registration, including payment of Bar dues, payment of the disciplinary assessment, timely notification of changes of address, and proper disclosure of trust account information or any changes therein.

. . .

Rule 1.3. Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 1.4. Communication

(a)   A lawyer shall:

(1)   promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2)   reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3)   keep the client reasonably informed about the status of the matter;

8

  (4) promptly comply with reasonable requests for information; and

  (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) The lawyer shall give the client sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued.

(c) A lawyer who provides any form of financial assistance to a client during the course of a representation shall, prior to providing such financial assistance, inform the client in writing of the terms and conditions under which such financial assistance is made, including but not limited to, repayment obligations, the imposition and rate of interest or other charges, and the scope and limitations imposed upon lawyers providing financial assistance as set forth in Rule 1.8(e).

### Rule 1.5. Fees

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

  (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

  (3) the fee customarily charged in the locality for similar legal services;

  (4) the amount involved and the results obtained;

  (5) the time limitations imposed by the client or by the circumstances;

      (6)    the nature and length of the professional relationship with the client;

      (7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

      (8)    whether the fee is fixed or contingent.

(b)    The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

. . .

Based on his own admissions in his First and Amended Motions for Consent Discipline, it is clear that Collier has violated each of these Rules. He did not provide competent and diligent representation, did not communicate with his clients about fees or otherwise, and charged fees in excess of that permitted by the Bankruptcy Court's own standing orders. Accordingly, sanctions, including disbarment, are warranted.

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the following discipline is imposed:

(1)    Collier is disbarred from the practice of law in this District;

(2)    Collier is required to thoroughly review his records and return any advance payment of fees or expenses that has not been earned or incurred and to respond promptly to any fee inquiry by former clients;

(3)    Collier is required to send a letter within thirty days of this Opinion and Order, notifying any current or former clients of his disbarment; and

(4)    Collier is required to comply with all rules of Professional Conduct applicable to a

client's file upon an attorney's termination of practice.

This Opinion and Order will be placed on the Court's website for a period of six months.[4]

**IT IS FURTHER ORDERED** that Collier be served by the U.S. Marshals Service with a copy of this Opinion and Order.

MONROE, LOUISIANA, this 28th day of September, 2015.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[4]Collier's former partner, McBride, was publicly reprimanded for his gross negligence, and the Opinion and Order in that case was placed on the Court's website for a period of six months.